IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    *Plaintiff*,

v.                                              Civ. No. 1:17-cv-01001

$149,750.00 IN UNITED STATES CURRENCY,

    *Defendant-in-rem.*

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

Plaintiff, United States of America, brings this complaint in accordance with Supplemental Rule G(2) of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

### NATURE OF THE ACTION

1.    This is a civil action to forfeit and condemn to the use and benefit of the United States of America property involved in violations of the Controlled Substances Act and 18 U.S.C. § 1952 that is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

### DEFENDANT *IN REM*

2.    The defendant *in rem* consists of the following:

    a. One hundred, forty-nine thousand, seven hundred and fifty ($149,750.00) in United States currency.

    (hereafter referred to as "Defendant Currency.")

3. The Defendant Currency was seized by the Drug Enforcement Administration on May 26, 2017, in the District of New Mexico.

4. The Defendant Currency is now, and during the pendency of this action will be, in the jurisdiction of this Court.

### JURISDICTION AND VENUE

5. The United States District Court for the District of New Mexico has subject matter jurisdiction under 28 U.S.C. §§ 1345, 1355(a) and 1356.

6. Venue for this civil forfeiture action is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395, as acts or omissions giving rise to the forfeiture took place in this district and the property is found in this district. Upon the filing of this complaint, the Defendant Currency will be arrested by execution of a Warrant for Arrest *In Rem* in the District of New Mexico.

### FACTS

7. On May 25, 2017, Drug Enforcement Administration (DEA) Special Agents Jarrell W. Perry and David Nutley were at the Greyhound Bus Station in Albuquerque, New Mexico to check on the westbound Greyhound bus arriving at 11:15 P.M. The bus was scheduled to depart at 12:30 A.M on May 26.

8. As passengers reboarded the bus, Agent Perry walked back toward the rear of the bus and began speaking with passengers as they sat down in their respective seats. Agent Nutley remained in the front area of the bus to observe Agent Perry.

9. Agent Perry approached a female, later identified as Savvonne Misa Tyson, who was seated 6 to 7 seats from the front of the bus, and a male, later identified as Ronnie Bernard Riley. Riley was standing directly behind Tyson in front of the aisle seat. Agent Perry stood to the rear of Tyson's and Riley's seats in order not to block their egress from their seating area or

movement on the bus. Agent Perry greeted Tyson and Riley, displayed his DEA badge, and identified himself as a police officer. Agent Perry informed them that the bus is checked for security reasons. Agent Perry asked Tyson and Riley for permission to speak with them, and they agreed. Agent Perry asked them if they were traveling together. Riley stated Tyson was his wife. Agent Perry asked them about their travel. Riley replied that they were going to Los Angeles from New York. Agent Perry then asked if they lived in Los Angeles or New York. Riley answered New York, informing Agent Perry that they were going to Los Angeles for a wedding. When Agent Perry asked who was getting married, Riley responded with, "Huh?" Agent Perry repeated the question, and Riley answered that it was his cousin getting married. Agent Perry then asked how long they were planning to stay in Los Angeles. Riley said "a week."

10. Agent Perry requested permission to look at their bus tickets. Riley handed Agent Perry a Greyhound Bus ticket in the name of Frank Johnson. Agent Perry reviewed the ticket and immediately returned it to Riley. Tyson handed Agent Perry a bus ticket in the name of Misa Carter. Agent Perry reviewed her bus ticket and immediately handed it back to Tyson.

11. Agent Perry requested permission to see their identification. Riley replied he did not have his identification. Tyson began to search through her belongings. Agent Perry asked Riley if they were planning to return via the bus. Riley said, "Yeah, most, I don't know because she don't, she." Riley did not complete his answer. Agent Perry asked Riley where they planned on staying in Los Angeles. Riley answered, "with my friend."

12. Tyson handed Agent Perry a Maryland identification card in the name of Savvonne Misa Tyson, which meant Tyson was traveling under a false name on her Greyhound bus ticket. Agent Perry reviewed the identification and immediately returned it back to Tyson.

13. Agent Perry asked Riley and Tyson if they had any luggage with them. Riley replied, "Yes." Agent Perry asked Riley where the luggage was located and he said, "In the basement, on the bottom." Riley identified a small bag in the overhead luggage compartment as belonging to him. He identified a small bag in the floor area by Tyson's feet. Agent Perry requested permission to search their carry-on bags for contraband and Riley agreed. Agent Perry searched both Riley and Tyson's carry-on bags with negative results for contraband. Riley stated they also each had one piece of checked luggage underneath the bus. Agent Perry requested and received permission from Riley and Tyson to search their jacket and pillow. Agent Perry searched their pillow and jacket with negative results for contraband. Agent Perry then asked for and received permission from Riley to search his person for contraband. Agent Perry searched Riley with negative results for contraband. Agent Perry requested and received permission from Riley and Tyson to search their checked luggage.

14. Agent Perry walked off the bus, followed by Agent Nutley. Agent Perry located and searched Tyson's checked suitcase with negative results for contraband. Agent Nutley located and searched Riley's red suitcase, which revealed two large aluminum foil wrapped bundles of money. The currency was also wrapped in rubber bands in various increments. Couriers of illegal drug currency commonly package drug proceeds in this manner.

15. Agent Perry boarded the bus again and asked Riley and Tyson if they would step off the bus to speak with him. Riley and Tyson gathered their belongings and walked off the bus. On the sidewalk outside, Agent Perry asked Riley if the money inside the red suitcase belonged to Riley. Riley replied, "yes." Agent Perry asked much money he had inside the suitcase. Riley said "$100,000." Agent Perry explained to Riley and Tyson they were being detained for investigation of the large amount of money that they were transporting.

16. Agents Perry and Nutley, Riley and Tyson walked into a private room inside the bus station. Agent Perry again asked if Riley had identification with him and Riley said no. Riley stated he did not purchase his bus ticket and that it was under a false name. Riley produced a Maryland identification card in the name of Ronnie Bernard Riley. His bus ticket bore the name Frank Johnson.

17. Riley stated none of the money belonged to Tyson and that it totaled $140,000. He claimed that he won the money at casinos in Baltimore and was taking it to California to celebrate a wedding. Riley stated that he did not have any receipts for his casino winnings. Riley said that none of the money had been in the bank in Baltimore and that his daughter had packaged the currency for him.

18. Agent Perry informed Riley that the Defendant Currency was being seized. Agent Perry filled out a personal property receipt for the Defendant Currency and provided Riley with a copy. Agent Perry also explained to Riley the process of filing a claim for the Defendant Currency. Riley and Tyson were released to continue their travel.

19. On May 31, 2017, Task Force Officer (TFO) Joshua Campos deployed his trained and certified narcotics canine on the Defendant Currency. TFO Campos informed Agent Perry that his narcotics canine alerted on the Defendant Currency for the odor of illegal narcotics.

20. Agent Perry and TFO Campos transported the currency to Loomis, Incorporated for an official count. The official count totaled $149,750.

21. On or about April 13, 2012, Riley was convicted for conspiracy to distribute heroin in Baltimore, Maryland.

**FIRST CLAIM FOR RELIEF**

22. The United States incorporates by reference the allegations in paragraphs 1 through 21 as though fully set forth.

23. Title 21, United States Code, Section 881(a)(6) subjects to forfeiture "[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter."

24. Defendant Currency was furnished, or intended to be furnished, in exchange for a controlled substance, or constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act and is thus subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELIEF

25. The United States incorporates by reference the allegations in paragraph 1 through 21 as though fully set forth.

26. Title 18, United States Code, Section 981(a)(1)(C) provides, in part, for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to an offense constituting, "specific unlawful activity" (SUA) as defined in 18 U.S.C. § 1956(c)(7), or conspiracy to commit such offense.

27. 18 U.S.C. § 1952 prohibits interstate and foreign travel or transportation with the intent to (1) distribute the proceeds of any unlawful activity; (2) commit any crime of violence to further any unlawful activity; or (3) otherwise promote, manage, establish, carry on, or facilitate

the promotion, management, establishment, or carrying on, of any unlawful activity. Unlawful activity is defined in 18 U.S.C. § 1952(b);

28. Defendant Currency is the proceeds of a violation of 18 U.S.C. 1952 or is the proceeds traceable to such property and, is thus subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE: Plaintiff seeks arrest of Defendant Currency and forfeiture of same to Plaintiff, determination of the validity and priority of claims of the Claimants and any Unknown Claimants to the Defendant Currency, costs and expenses of seizure and of this proceeding, and other proper relief.

Respectfully submitted,

JAMES D. TIERNEY
Acting United States Attorney

STEPHEN R. KOTZ
Assistant U.S. Attorney
P.O. Box 607
Albuquerque, NM 87103
(505) 346-7274

## 28 U.S.C. § 1746 DECLARATION

I am a Special Agent with the Drug Enforcement Administration who has read the contents of the Complaint for Forfeiture *In Rem* to which this Declaration is attached; and the statements contained in the complaint are true to the best of my knowledge and belief.

I declare under penalty of perjury and the laws of the United States of America that this Declaration is true and correct, except as to matters stated on information and belief, and as to those matters I believe them to be true.

Dated: 10-04-2017

Jarrell W. Perry, Special Agent
Drug Enforcement Administration